UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

MICHAEL JACKSON                       CIVIL ACTION NO. 6:20-cv-00050

VERSUS                                JUDGE SUMMERHAYS

U.S. COMMISSIONER,                    MAGISTRATE JUDGE HANNA
SOCIAL SECURITY
ADMINISTRATION

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, it is recommended that the Commissioner's decision should be affirmed in part, reversed in part, and remanded for further administrative action.

## Administrative Proceedings

The claimant, Michael James Jackson, fully exhausted his administrative remedies before filing this action. He filed an application for supplemental security income benefits ("SSI"), alleging disability beginning on May 1, 2020,[1] which was denied.[2] He then requested a hearing, which was held on October 31, 2018 before

---

[1]     Rec. Doc. 7-1 at 167.

[2]     Rec. Doc. 7-1 at 101.

Administrative Law Judge Holly Hansen.[3]  At the hearing, the claimant's alleged disability onset date was amended to April 4, 2016.[4]  The ALJ issued her ruling on January 18, 2019, concluding that the claimant was not disabled within the meaning of the Social Security Act from April 4, 2016 to October 7, 2018 but was disabled beginning on October 8, 2018 when he reached fifty years of age.[5]  The claimant requested Appeals Council review of the ALJ's decision, but the Appeals Council found no basis for review.[6]  Therefore, the ALJ's decision became the Commissioner's final decision.[7]  The claimant then initiated this action, seeking judicial review of the Commissioner's decision.

## Summary of Pertinent Facts

Mr. Jackson was born on October 8, 1968.[8]  At the time of the ALJ's decision, he was fifty years old.  He has an eleventh grade education[9] and no relevant work

---

[3]     A transcript of the hearing is found in the record at Rec. Doc. 7-1 at 51-72.

[4]     Rec. Doc. 7-1 at 53.

[5]     Rec. Doc. 7-1 at 19-27.

[6]     Rec. Doc. 7-1 at 4.

[7]     *Higginbotham v. Barnhart*, 405 F.3d 332, 336 (5th Cir. 2005).

[8]     Rec. Doc. 7-1 at 91.

[9]     Rec. Doc. 7-1 at 196.

experience.[10]  He alleged that he has been disabled since April 4, 2016[11] due to scoliosis and two total hip replacements.[12]

Mr. Jackson was involved in a motor vehicle accident when he was approximately seventeen years old, which seriously damaged his left hip.  After the accident, he developed degenerative disc disease, sclerosis of the acetabulum, and radiographic changes, causing chronic pain and necessitating replacement of the hip joint.  In March 2005, when he was 36 years old, Mr. Jackson underwent a left total hip arthroplasty due to left hip end-stage hip joint disease.[13]

Mr. Jackson's hips were x-rayed on April 4, 2005[14] and December 5, 2005.[15] The images showed no significant changes between the dates of the x-rays.  The hip replacement on the left was satisfactorily aligned without complications, although large subchondral cysts were noted on the acetabular side of the arthroplasty. Moderately severe degenerative changes were noted in the right hip joint consisting of medial joint space narrowing, subchondral sclerosis and cyst formation, and

---

[10]    Rec. Doc. 7-1 at 61.

[11]    Rec. Doc. 7-1 at 53.

[12]    Rec. Doc. 7-1 at 92.

[13]    Rec. Doc. 7-1 at 242-243, 250-252.

[14]    Rec. Doc. 7-1 at 245.

[15]    Rec. Doc. 7-1 at 244.

deformity of the right humeral head.  On February 14, 2006, Mr. Jackson's right hip was replaced due to right hip pain that was limiting his activities and failed conservative treatment.[16]

In January 2015,[17] Mr. Jackson reported low back pain for the past three years without relief from Naproxen and Ibuprofen.  He was diagnosed with lumbago, and Meloxicam was prescribed.

In September 2015,[18] Mr. Jackson again complained of burning pain in his low back that started after his hip replacement operations.  He was walking with a cane, had marked scoliosis, could not raise up on his left toes, and had a marked weakness in his left thigh extensors and ankle flexors.  The doctor's assessment was that his lumbago had worsened because he now had signs of neuropathy at L3-L4. Gabapentin was prescribed along with Meloxicam (Mobic).   The provisional diagnosis was lumbar spine disease with compressive neuropathy.

A November 7, 2015 MRI of Mr. Jackson's lumbar spine[19] showed moderate-sized disc protrusions at L3-4 and 4-5 with mild spondylosis and hypertrophy of the ligamentum flavum, moderate degrees of spinal stenosis with bilateral nerve root

---

[16]     Rec. Doc. 7-1 at 241, 246-249.

[17]     Rec. Doc. 7-1 at 258-261.

[18]     Rec. Doc. 7-1 at 254-257.

[19]     Rec. Doc. 7-1 at 262-263.

effacement at both levels, and prominent endplate changes at both levels. It also showed a moderate-sized disc protrusion at L5-S1 with mild spondylosis and hypertrophy of the ligamentum flavum, bilateral nerve root effacement, worse on the left, and prominent endplate changes. The MRI showed a small disc protrusion at L1-2 with mild spondylosis and hypertrophy of the ligamentum flavum with moderate narrowing of the neural foramen bilaterally but without nerve root effacement. At L2-3, the MRI showed mild spondylosis with hypertrophy of the ligamentum flavum, no nerve root effacement, and no significant neural foramen narrowing. The MRI also showed mild scoliosis.

Mr. Jackson was seen at the Teche Action Clinic in Franklin, Louisiana, on August 26, 2016 in follow up for routine health maintenance.[20] He complained of back pain, bilateral hip pain, and pain in his right shoulder with numbness in his right arm. He was prescribed Gabapentin and Mobic. Mr. Jackson had lab work done on September 2, 2016.[21] He followed up on September 9, 2016,[22] primarily complaining about pain in his right shoulder. The diagnoses assigned included essential hypertension, low back pain, mixed hyperlipidemia, polyarthritis, and pain in the right hip, left hip, and right shoulder.

---

[20]    Rec. Doc. 7-1 at 331-336.

[21]    Rec. Doc. 7-1 at 328-330.

[22]    Rec. Doc. 7-1 at 322-327.

Mr. Jackson was again seen at the Teche clinic on August 26, 2017.[23]  He complained about tingling and numbness in both hands and reported pain from his right shoulder radiating to his right arm as well as low back pain and hip pain.  His gait was normal, and motor examination showed normal tone, bulk, and strength. He was prescribed Gabapentin for pain and neuropathy.

Mr. Jackson returned to the Teche clinic on September 29, 2017.[24]  His chief complaints were hypertension, back pain, and left hip pain.  He reported daily low back and left hip pain with swelling, muscle spasms, and weakness in both legs with pain.  Examination showed joint stiffness, limitation of joint movement, and muscle weakness.  It was noted that he needed to see a neurologist for bulging discs and to see an orthopedist for his left hip.  He was prescribed Amlodipine for hypertension, Atorvastatin for cholesterol, Gabapentin for pain and neuropathy, and Vitamin D2 for a vitamin deficiency.

An October 24, 2017 MRI of Mr. Jackson's lumbar spine[25] showed diffuse degenerative disc and facet disease of the lumbar spine, congenital narrowing of the lumbar spinal canal, and bilateral foraminal narrowing at L4-5 and L5-S1.

---

[23]     Rec.Doc. 7-1 at 315-321.

[24]     Rec. Doc. 7-1 at 302-310.

[25]     Rec. Doc. 7-1 at 282-283.

Mr. Jackson followed up at the Teche clinic on October 31, 2017,[26] again reporting back and left hip pain.  His diagnoses and medications remained the same.

On January 24, 2018, he saw Dr. Wael Alabdulkarim, a neurologist.[27] Unfortunately, the treatment notes are handwritten and illegible.

Mr. Jackson followed up at the Teche clinic on February 7, 2018.[28]  Tylenol-Codeine #3 and Zanaflex were prescribed for back and muscle pain.

Mr. Jackson visited the Teche clinic on May 2, 2018,[29] a day after an emergency room diagnosis of viral infection.  The infection was improving, and he complained of numbness and tingling in his legs.  He reported having seen an orthopedist who advised him to see a neurologist.  His medications were continued, with a higher dosage of Gabapentin.

Mr. Jackson returned to the Teche clinic on July 2, 2018.[30]  He complained that his back pain was worsening and that he had tingling and numbness in his legs and feet.  He was advised to see a neurologist.

---

[26]    Rec. Doc. 7-1 at 288-295.

[27]    Rec. Doc. 7-1 at 286-287.

[28]    Rec. Doc. 7-1 at 364-371.

[29]    Rec. Doc. 7-1 at 356-363.

[30]    Rec. Doc. 7-1 at 349-354.

Mr. Jackson was seen again at the Teche clinic on August 7, 2018.[31]  He reported that he had seen a neurologist but was told that he needed to see a neurosurgeon.  He reported worsening back pain, numbness, tingling, and leg weakness.  His medications were continued, and a referral to a neurosurgeon was to be attempted.  Mr. Jackson followed up on October 1, 2018.[32]

On October 31, 2018, Mr. Jackson testified at a hearing regarding his symptoms, his medical treatment, and his functionality.  He confirmed that he underwent hip replacement surgery in 2005 and 2006 and testified that he had experienced a lot of pain and discomfort since.  He stated that an orthopedist told him that his back might be causing his hip pain.  He also stated that he saw a neurologist who referred him to a neurosurgeon.  He testified that he was waiting to see a surgeon at UMC in New Orleans.  He said that he has constant low back pain every day that is not alleviated by pain medication.  If the neurosurgeon recommends surgery, he plans to have it.

Mr. Jackson was using a cane the day of the hearing and stated that he had been walking with a cane since 2016 because he loses his balance.  He testified that he lives with his disabled mother who has daily nursing assistance.  He helps with

---

[31]     Rec. Doc. 7-1 at 344-348.

[32]     Rec. Doc. 7-1 at 338-343.

8

cooking for her, washing the dishes, and washing clothes. However, his nephew also lives with them and helps with household tasks.

He said he can stand for about thirty minutes before his left hip starts to bother him. He estimated that he can walk about half a mile before having to take a break. He said he would not attempt to walk without using his cane. He estimated that he can lift about fifteen pounds without aggravating his symptoms. He stated that he has trouble sleeping at night due to discomfort and naps sitting up for about thirty minutes to an hour every day. He denied having problems with either of his hands. Mr. Jackson testified that pain would prevent him from being able to sit for five to six hours each day. He estimated that he can sit for about forty-five minutes to an hour without pain. He testified that the weather also affects his pain level. In addition to the problems with his back and hips, he has high blood pressure and cholesterol for which he takes medication.

Mr. Jackson stated that he can drive. He drives to the grocery store but is assisted by his nephew. He goes to church and watches football on Sundays. He can take care of his personal hygiene and is assisted by his nephew, if necessary.

Mr. Jackson now seeks reversal of the Commissioner's adverse ruling for the time period from April 4, 2016 (the alleged disability onset date) and October 8, 2018 (his fiftieth birthday).

9

## Analysis

### A.    Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence.[33] "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[34] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[35]

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed.[36] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[37] Conflicts in

---

[33]    *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995).

[34]    *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983).

[35]    *Hames v. Heckler*, 707 F.2d at 164 (citations omitted).

[36]    42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d at 173.

[37]    *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022.

the evidence[38] and credibility assessments[39] are for the Commissioner to resolve, not the courts. Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education, and work experience.[40]

## B.    <u>Entitlement to Benefits</u>

The SSI program provides income to individuals who meet certain income and resource requirements, have applied for benefits, and are disabled.[41] A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[42] A claimant is disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience,

---

[38]    *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985).

[39]    *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991).

[40]    *Wren v. Sullivan*, 925 F.2d at 126.

[41]    42 U.S.C. § 1382(a)(1) & (2). See, also, *Smith v. Berryhill*, 139 S.Ct. 1765, 1772 (2019).

[42]    42 U.S.C. § 1382c(a)(3)(A).

participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work.[43]

## C.    Evaluation Process and Burden of Proof

A five-step inquiry is used to determine whether a claimant is disabled.  The Commissioner must to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those listed in the regulations; (4) is able to do the kind of work he did in the past; and (5) can perform any other work.[44]  Before moving from the third step to the fourth, the Commissioner must evaluate the claimant's residual functional capacity[45] by determining the most the claimant can still do despite his physical and mental limitations.[46]  The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work.[47]

---

[43]    42 U.S.C. § 1382c(a)(3)(B).

[44]    20 C.F.R. § 404.1520.

[45]    20 C.F.R. § 404.1520(a)(4).

[46]    20 C.F.R. § 404.1545(a)(1).

[47]    20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy.[48]  This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence.[49]  If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding.[50]  If the Commissioner determines that the claimant is disabled or not disabled at any step, the analysis ends.[51]

## D.    The ALJ's Findings and Conclusions

In this case, the ALJ determined, at step one, that Mr. Jackson had not engaged in substantial gainful activity since applying for Social Security benefits.  The claimant did not challenge this finding, which is supported by substantial evidence in the record.

At step two, the ALJ found that the claimant has the following severe impairments:  lumbar degenerative disc disease with stenosis and low back pain;

---

[48]      *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016); *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994).

[49]      *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987).

[50]      *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005); *Fraga v. Bowen*, 810 F.2d at 1302.

[51]      *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994), cert. den. 914 U.S. 1120 (1995) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987)).

residuals from degenerative joint disease in the bilateral hips, status-post bilateral total hip replacement; neuropathy; and polyarthritis/arthropathy. The claimant did not challenge this finding, which is supported by substantial evidence in the record.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. The claimant did not challenge this finding.

The ALJ found that the claimant has the residual functional capacity to perform sedentary work except that he would be limited to occasional balancing and stooping; he should never kneel, crouch, crawl, or climb; he should never be exposed to unprotected heights or dangerous moving machinery; and he would require a cane to ambulate during the workday. The claimant challenged this finding.

At step four, the ALJ found that the claimant had no past relevant work. The claimant did not challenge this finding, which is supported by substantial evidence in the record.

At step five, the ALJ found that the claimant was not disabled before October 7, 2019 but was disabled thereafter, upon reaching his fiftieth birthday. The claimant challenged this finding, arguing that the ALJ should have found him disabled from April 4, 2016 forward.

## E.    The Allegations of Error

Mr. Jackson contends that the ALJ erred (1) by basing her residual functional capacity finding on the ALJ's own unsupported opinion of the limitations resulting from medical conditions; (2) by failing to apply the proper legal standard at the fifth step of the analysis; and (3) by failing to reach a residual functional capacity finding that is supported by substantial evidence.  These assignments of error are intertwined and will be considered together.

## F.    The ALJ Erred in Evaluating Residual Functional Capacity

A residual functional capacity assessment "is a determination of the most the claimant can still do despite his physical and mental limitations and is based on all relevant evidence in the claimant's record."[52]    The ALJ is responsible for determining a claimant's residual functional capacity.[53]  In doing so, the ALJ must consider all of the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite any physical and mental limitations.[54]  The evaluation of a claimant's subjective symptoms is a task particularly within the province of the ALJ who has had an

---

[52]    *Perez v. Barnhart*, 415 F.3d at 462 (citing 20 C.F.R. § 404.1545(a)(1)).

[53]    *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995).

[54]    *Martinez v. Chater*, 64 F.3d at 176.

opportunity to observe whether the person seems to be disabled.[55]  In making a residual functional capacity assessment, an ALJ must consider all of the claimant's symptoms – even those that are not severe[56] – and the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence.

However, an "ALJ may not – without opinion from medical experts – derive the applicant's residual functional capacity based solely on evidence of his or her claimed medical conditions."[57]  For that reason, ALJs are cautioned not to substitute their own evaluations of the evidence for that of the physicians who actually treated or examined the claimant,[58] especially since common sense can mislead and lay intuition about medical phenomena are often wrong.[59]  Thus, neither the ALJ nor the court is free to substitute its own opinion for that of medical professionals.[60]

---

[55]    *Chambliss v. Massanari*, 269 F.3d 520, 522 (5th Cir. 2001); *Loya v. Heckler*, 707 F.2d 211, 215 (5th Cir. 1983).

[56]    *Giles v. Astrue*, 433 Fed. App'x 241, 245 (5th Cir. 2011) (citing 20 C.F.R. § 404.1545).

[57]    *Williams v. Astrue*, 355 Fed. App'x 828, 832 & n. 6 (5th Cir. 2009) (citing *Ripley v. Chater*, 67 F.3d at 557-58.

[58]    See *Frank v. Barnhart*, 326 F.3d 618, 622 (5th Cir. 2003) (citing *Schmidt v. Sullivan*, 914 F.2d 117, 188 (7th Cir. 1990)).

[59]    *Frank v. Barnhart*, 326 F.3d at 622.

[60]    *Potier v. U.S. Commissioner, Social Security Administration*, No. 16-cv-00144, 2017 WL 1103470, at *8 (W.D. La. Feb. 23, 2017) (citing *Fabre v. Astrue*, No. 13-00076-BAJ-RLB, 2014 WL 4386424, at *6, n. 6 (M.D. La. Sept. 4, 2014)).

Mr. Jackson argued that, in this case, the ALJ relied solely upon her own lay judgment in evaluating his residual functional capacity for the time period between his alleged disability onset date and his fiftieth birthday since the ALJ gave little weight to the opinions of the state medical examiner and the record contains no opinions from any other physician regarding the functional limitations arising from his medical conditions.  In July 2016, state agency medical consultant Dr. Jonathan Norcross evaluated Mr. Jackson's residual functional capacity and found him limited to sedentary work but able to stand or walk four hours and able to sit for six hours out of an eight hour work day; and able to frequently balance, climb, stoop, kneel, crouch, and crawl.[61]  The ALJ discounted Dr. Norcross's opinions, expressly giving them "little weight" because they were "inconsistent with the record, as the record showed the claimant would have more limitation in his ability to stand/walk and in his postural abilities."[62]  However, the record contains no functional analysis report submitted by any of the claimant's treating physicians; the treatment notes from Mr. Jackson's physicians contain no analysis of how his medical conditions affect his ability to function; and the ALJ did not require Mr. Jackson to be examined by a consulting physician who could have evaluated his functionality.  Therefore, the only evidence underlying the ALJ's residual functional capacity finding are the

---

[61]    Rec. Doc. 7-1 at 91-100.

[62]    Rec. Doc. 7-1 at 24.

17

claimant's function report and his testimony at the hearing, where he said he would not be able to sit for five to six hours per day.  While an ALJ has the power to evaluate a claimant's functional capacity, that evaluation must be based on medical opinions.  Here, however, there are no underlying medical opinions in the record, and the ALJ's residual functional capacity finding is based solely on the ALJ's own assessment of how the claimant's medical conditions affect his functionality.

The ALJ "has a duty to fully and fairly develop the facts relative to a claim for disability benefits,"[63] and the Fifth Circuit will reverse an ALJ's decision if the claimant shows that the ALJ failed in his duty to fully and fairly develop the record and the claimant was prejudiced thereby.[64]  Prejudice can be established by showing that, had the ALJ adequately performed his duty, he "could and would have adduced evidence that might have altered the result."[65]  The ALJ's duty to develop the record must be balanced against the fact that the claimant bears the burden of proof up through Step Four of the evaluation process.[66]  The ALJ is not required to recontact a medical source when the evidence already obtained from that source is adequate

---

[63]    *Carey v. Apfel*, 230 F.3d 131, 142 (5th Cir .2000).

[64]    *Carey v. Apfel*, 230 F.3d at 142.

[65]    *Cornett v. Astrue*, 261 Fed. App'x 644, 647 (5th Cir. 2008) (quoting *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984)).

[66]    *Holifield v. Astrue*, 402 Fed. App'x 24, 26 (5th Cir. 2010) (citing *Audler v. Astrue*, 501 F.3d 446, 448 (5th Cir. 2007)).

for the ALJ to determine whether the claimant is disabled,[67] and consultative examinations are required only if the record establishes that such an examination is necessary to enable the ALJ to make the disability decision.[68]

Since there is no information in the record from any physician who examined Mr. Jackson regarding the functional effect of his claimed impairments, this is the type of case in which a consultative examination by an orthopedist, a neurologist, or a neurosurgeon would have assisted the ALJ in determining whether Mr. Jackson was disabled between April 2016 and October 2018. Absent such assistance, the ALJ used only her own judgment to determine that Mr. Jackson's impairments were both more limiting than determined by the state medical examiner and still not disabling. After assigning little weight to Dr. Norcross's opinions, she crafted a residual functional capacity assessment based on her own evaluation of Mr. Jackson's functionality without assistance from any medical professional's opinions. This was error, and it was not harmless. Had the ALJ obtained a consultative examination from an orthopedist, neurologist, or neurosurgeon or a functional evaluation from the claimant's primary care physician, her finding might have been different. The ALJ failed to develop the record, she failed to apply the proper legal standard in evaluating the claimant's residual functional capacity, and her residual

---

[67]    See *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012).

[68]    *Hardman v. Colvin*, 820 F.3d 142, 148 (5th Cir. 2016).

functional capacity finding is not supported by substantial evidence in the record. Accordingly, remand is necessary to determine whether Mr. Jackson was disabled between his alleged disability onset date and his fiftieth birthday.

## Conclusion and Recommendation

IT IS THE RECOMMENDATION of this Court that the decision of the Commissioner be AFFIRMED IN PART and REMANDED IN PART. More particularly, this Court recommends (a) that the Commissioner's decision be AFFIRMED to the extent that it finds Mr. Jackson disabled on and after October 8, 2018, and (b) that the Commissioner's decision be REVERSED to the extent it finds Mr. Jackson not disabled between April 4, 2016 and October 8, 2018 and REMANDED to the Commissioner pursuant to the fourth sentence of 42 U.S.C. § 405(g) with instructions to again evaluate the claimant's residual functional capacity and disability. Inasmuch as the reversal and remand recommended herein falls under sentence four of Section 405(g), any judgment entered in connection herewith will be a "final judgment" for purposes of the Equal Access to Justice Act (EAJA).[69]

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of

---

[69]    See, *Richard v. Sullivan*, 955 F.2d 354 (5th Cir. 1992), and *Shalala v. Schaefer*, 509 U.S. 292 (1993).

Court.  A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P. 6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error.[70]

Signed in Lafayette, Louisiana, this 21st day of December 2020.

_____

PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE

---

[70]    See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), superseded by statute on other grounds, 28 U.S.C. § 636(b)(1).